## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MURPHY MARINE SERVICES, INC. | ) | Case No. 01-926 |
| | ) | through 01-950 (MWF) |
| Debtor. | ) | |

**AMENDED PRETRIAL MEMORANDUM IN SUPPORT OF THE ASSERTED MARITIME LIEN OF MATTHEW BILBOW AGAINST THE PROCEEDS OF THE SALE OF THE M/V HUMACAO AMENDING THE PRETRIAL MEMORANDUM IN SUPPORT TO THE ASSERTED MARITIME LIENS OF ROBERT L. SARAVELLO, JOHN BIRCH, MICHAEL CONEY, AND FRANCIS CASPER WITH RESPECT TO PROCEEDS OF THE SALE OF THE NPR ASSETS**

Matthew Bilbow ("Bilbow") submits this Pretrial Memorandum in support of his Maritime Lien Claim and seeks to amend the Pretrial Memorandum in support of the Martime Liens Robert L. Saravello, John Birch, Michael Coney, and Francis Casper with Respect to Proceeds of the Sale of the NPR Assets (the "Saravello Pretrial Memorandum") wherein it was erroneously asserted that Bilbow had no maritime lien solely because his injury occurred on a pier as opposed to on board a ship and states as follows:

1. On or about February 25, 2000, Bilbow, a crane operator, was injured while on a pier at the Packer Avenue Terminal in Philadelphia, Pennsylvania when he was struck by a motor vehicle operated by an employee of the Debtor while acting within the scope of his employment aboard the M/V Humacao that the Debtors owned and operated.

2. At the time of the Saravello Pretrial Memorandum, Bilbow's counsel had determined that Bilbow's injury did not occur on board the M/V Humacao and had mistakenly concluded that Bilbow would be unable to assert a maritime lien on that basis alone.

3. After further consultation with maritime counsel, it was determined that under certain circumstances an injury that occurs on shore can give rise to a maritime claim. See

Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185 (1963) (longshoreman injured as a result of slipping on cargo that was spilled when vessel was being unloaded) where the Court noted: "There is no distinction between torts committed by the ship itself and by the ship's personnel while operating it, any more than there is between torts 'committed' by a corporation and by its employees." Id. at 210. Cf. Hopson v. Texaco, Inc., 383 U.S. 262, 86 S.Ct 765 (1966) (admiralty jurisdiction and the Jones Act implicated when seamen were involved in an automobile accident during repatriation). The tortious acts of a ship's employee acting within the scope of that employment does give rise to a maritime claim. 1B Bendedict on Admiralty (7th ed. 2002) § 29 p. 3-220. Cf. Boudoin v. Lykes Brothers Steamship Co., Inc., 348 U.S. 336, 75 S. Ct. 382 (1955) (ship found to be unseaworthy as a result of crew member with a propensity towards violence assaulting another crew member.)

4. So long as the Humacao's employee that struck Bilbow on the pier was engaged in ship's business, the Humacao would be liable for liable for Bilbow's injuries.

5. Tort claims against a vessel do give rise to maritime liens. See The John G. Stevens, 170 U.S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969 (1898). Personal injury tort claims of longshoremen are specifically included among those tort claims that give rise to maritime liens. See Reed v. Steamship Yaka, 373 U.S. 410, 413, 83 S.Ct. 1349, 1452 (1963); In Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872 (1946).

6. Tort claims have a higher priority than preferred ship mortgage liens as well as liens for necessaries. 46 USC § 31326.

7. With respect to the relative priority of wage claims and tort claims, both of which are preferred maritime liens with priority over a maritime mortgage, some authorities, such as United States v. M/V Andoria, 570 F. Supp. 413 (E.D. La. 1983), do suggest that wage claims

have priority over tort claims. Neither Congress nor the United State Supreme Court, however, has ranked the relative priorities of maritime wage and tort claims. The Supreme Court in The John G. Stevens, 170 U.S. at 116, did observe:

> "It has generally been laid down in the English text-books that a maritime lien for damages by a collision takes precedence of all earlier maritime liens founded in contract. And the English and Irish courts have even held that a claim for damages from a collision by the negligence of a foreign ship creates a lien upon the whole value of the ship and freight, without deduction for seamen's wages, because, it has been said, the owner of the ship, being personally liable to the seamen should not be permitted to deduct expenses for which he is liable, and thus benefit the wrongdoer at the expense of him to whom wrong has been done."

The Supreme Court also noted:

> "The preference due to the lien for damages from collision, over earlier claims founded on contract, has been carried so far as to allow the lien for damages to prevail over the claim of seamen for wages earned before the collision, by Judge Lowell, in the District of Massachusetts, in The Enterprise, 1 Low. 455, Fed. Cas. No. 4,498; by Judge Nixon, in the District of New Jersey, in The Maria & Elizabeth, 12 Fed. 627; by Judges Gresham and Jenkins, in the circuit court of appeals for the Seventh Circuit in The F.H. Stanwood, 9 U.S. App. 15, 1 C.C.A. 379, and 49 Fed. 577; and by Judge Swan, in the Eastern District of Michigan, in The Nettie Woodward, 50 Fed. 224." Id. at 119

The Supreme Court list some other decision, principally from New York, where courts have held that wages claims had greater priority than tort claims. Ultimately, the Court reserved on a determination of the relative rank between wage and tort claims stating: "[t]he case at bar, however, presents no question of the comparative rank of seamen's wages, which may depend upon peculiar considerations." Robert M. Hughes, Handbook of Admiralty Law § 183 (1901) states:

> "THE JOHN STEVENS case expressly reserves the question whether the claim for tort should be preferred to a prior claim for seamen's wages, but the reasoning of that case applies with equal force even to claims of as high a merit as seamen's wages, and, it is believed that, when the question is fairly presented, a preference

will be given to tort claims even over claims for prior wages." (For the convenience of the Court, a copy of this passage is attached hereto as Exhibit A.)

**RELIEF REQUEST**

8. Presently pending before the Court is a motion of Bilbow to lift the automotic stay to allow him to liquidate his personal injury claim in the state or federal courts of Pennsylvania. In that the Bankruptcy Court lacks jurisdiction to liquidate personal injury claims, it is anticipated that Bilbow will liquidate their claims outside of the bankruptcy context and not as part of the maritime lien litigation

9. Bilbow understands that his claim is covered by a protection and indemnification policy ("P&I Policy"). Specifically, Bilbow's claim is covered by the Liverpool & London P&I Association. At a minimum, Bilbow submits that in order to protect his maritime lien rights, it is necessary to establish an escrow account in an amount sufficient to cover the deductible which his claim would be subject.

WHEREFORE, Matthew Bilbow respectfully requests that the Court enter an Order finding that he holds a maritime lien claim with priority over all other maritime lien claimants and that the Court adequately protect his maritime lien claim by ordering that the Trustee escrow funds to satisfy any portion of his claim that will not be covered by applicable insurance policies and to maintain such an escrow until Bilbow has fully liquidated his claim.

Dated: April 25, 2003

ELZUFON AUSTIN REARDON,
TARLOV & MONDELL P.A.

 */s/ Charles J. Brown*
William D. Sullivan, Esquire (No. 2820)
Charles J. Brown, III, Esquire (No. 3368)
300 Delaware Avenue, 17th Floor
P.O. Box 1630
Wilmington, DE 19899
(302) 428-3181

**CERTIFICATE OF SERVICE**

      I, Charles J. Brown, III hereby certify that I am not less than 18 years of age, and that service of the Pretrial Memorandum in Support of the Asserted Maritime Liens of Matthew Bilbow Against the Proceeds of the Sale of the M/V Humucao Amending the Pretrial Memorandum in Support to the Asserted Maritime Liens of Robert L. Saravello, John Birch, Michael Coney, and Francis Casper with Respect to Proceeds of the Sale of the NPR Assets was made on April 25, 2003, upon the parties listed below via facsimile, hand delivery or First Class Mail.

Frank Perch, Esquire
Office of the United States Trustee
844 King Street
Suite 2313, Lock Box 35
Wilmington, DE 19801-5519

Charlene D. Davis
Daniel K. Astin
Anthony M. Saccullo
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899

Eric Lopez Schnabel, Esquire
James H. Joseph, Esquire
Klett Rooney Lieber & Schorling
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

Richard Riley, Esq.
Duane Morris & Heckscher LLP
1100 N. Market St., Ste. 1200
P.O. Box 195
Wilmington, DE 19801

Susan Kaufman
Heiman, Aber, Goldlust & Baker
702 King Street, Suite 600
Wilmington, DE 19801

Alfred E. Yudes, Jr.
Watson, Farley & Williams
380 Madison Avenue
New York, NY 10017

Kerry Ann Brennan
Pillsbury Winthrop LLP
One Battery Park Plaza
New York, New York 10004-1490

James W. Carbin
Duane Morris LLP
744 Broad Street
Suite 1200
Newark, New Jersey 07102-3889

      I certify the foregoing to be true and correct under the penalty of perjury.

Dated: April 25, 2003                                  */s/ Charles J. Brown, III*
                                                                                          Charles J. Brown, III