# EXHIBIT A

# HANDBOOK

## OF

# ADMIRALTY LAW

By ROBERT M. HUGHES, M. A.

Of the Norfolk (Va.) Bar

St. Paul, Minn.
WEST PUBLISHING CO.
1901

Ex. "7"

| | |
|---|---|
| RITIME CLAIMS. (Ch. 17 | § 183)   RANK AS AFFECTED BY NATURE OF CLAIMS.   341 |

the ship, which estops maritime liens to supply e. In addition, the bottom on the ship at a high nes practically an insurer those perils of the sea n that those who labored ould be preferred in the ims for general average ims of the agents at the ship in better shape, are this point Judge Billings

bottomry obligation for yage has a lien upon the rs save the mariners for services or sacrifices or y which carry with them bottomry bond, like any conditional interest but at extent an owner. In no more than absolute concerned. To hold any udice the interests of the his interest, as well as for litional owners, that the e of a part, and that the to make good the sacriers who render benefits bottom pledged to him , even against him. See Macl. Shipp. 702-705. I rity, the general average ry bonds. The transac-

dm. 112.

tions out of which the general average arose were subsequent to these bonds, and aided in providing and making available the bottom which these bonds contingently represented."

### SAME—MORTGAGES.

**182. Mortgages rank below all maritime claims.**

The mortgagee is worse off than any, for his claim is not marine. He merely claims through the owner, from whom he is only one step removed, and accordingly all marine claims are preferred to his debt; and even recording it under section 4192 of the Revised Statutes does not affect this principle.[1]

### SAME—TORT CLAIMS.

**183. These claims, whether for pure torts or torts where there are also contract relations, rank prior contract claims, and probably subsequent contract claims, where the contract claimant has an additional remedy against the owner.**

These claims, as a general rule, rank all prior contract claims. The leading case on this subject is THE JOHN G. STEVENS.[1] Mr. Justice Gray, in delivering the opinion of the court in that case, says:

"The collision, as soon as it takes place, creates, as security for the damages, a maritime lien or privilege,—jus in re, —a proprietary interest in the offending ship, and which, when enforced by admiralty process in rem, relates back to the time of the collision. The offending ship is considered as herself the wrongdoer, and as herself bound to make com-

---

§ 182.  [1] THE J. E. RUMBELL. 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 845.

§ 183.  [1] 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969.

pensation for the wrong done. The owner of the injured vessel is entitled to proceed in rem against the offender, without regard to the question who may be her owners, or to the division, the nature, or the extent of their interests in her. With the relations of the owners of those interests, as among themselves, the owner of the injured vessel has no concern. All the interests existing at the time of the collision in the offending vessel, whether by way of part ownership, of mortgage, of bottomry bond, or of other maritime lien for repairs or supplies, arising out of contract with the owners or agents of the vessel, are parts of the vessel herself, and as such are bound by and responsible for her wrongful acts. Any one who had furnished necessary supplies to the vessel before the collision, and had thereby acquired, under our law, a maritime lien or privilege in the vessel herself, was, as was said in The Bold Buccleugh, before cited, of the holder of an earlier bottomry bond, under the law of England, 'so to speak, a part owner in interest at the date of the collision, and the ship in which he and others were interested was liable to its value at that date for the injury done, without reference to his claim.' 1 Moore, P. C. 285."

This reasoning is a necessary deduction from the doctrine, now well settled, that an admiralty claimant has not merely a right to arrest a vessel, but a proprietary interest in the vessel itself,—a jus in re. Consequently, any contract claimant who permits the vessel against which he has a claim to be navigated assumes the risks of navigation to that extent, and holds her out to the world as liable to those with whom she is brought into relations even involuntarily on their part. The only question directly decided in this case was that a claim for damages from negligent towage ranked a prior claim for materials and supplies. The questions as to all other contracts were carefully reserved by the court, but the line of reasoning which the court follows is equally applicable to any other contract claim.

On this question the decisions in the New York circuit,

which are usually of such lawyer instinctively turns lied on. THE JOHN C number of them for the p doctrine which they ha preponderance of autho claims ranked tort claim this was that these tort c which the owner could i the New York judges h which the contrary doct that they had not passed governed by peculiar cir that the vessels in the been foreign vessels. T tempted to draw a disti and claims of quasi tort to meet the suggestion o in which he had said option whether to deal creditor had not. Acc gued that this principle lision, in any event, an out of negligent towage contract though torts i negligence. This disti JOHN G. STEVENS C towage, and in which t the question fully, decid out of contract or not,

THE JOHN G. ST the question whether t to a prior claim for s

₃1 W. Rob. Adm. 112.
₂170 U. S. 113, 18 Sup.

ME CLAIMS. (Ch. 17

wner of the injured
gainst the offender,
be her owners, or to
their interests in her.
e interests, as among
ssel has no concern.
 the collision in the
 ownership, of mort-
naritime lien for re-
t with the owners or
essel herself, and as
r her wrongful acts.
 supplies to the ves-
eby acquired, under
in the vessel herself,
, before cited, of the
der the law of Eng-
terest at the date of
he and others were
t date for the injury
r Moore, P. C. 285."
on from the doctrine.
mant has not merely
ietary interest in the
y, any contract claim-
hich he has a claim
f navigation to that
s liable to those with
ven involuntarily on
decided in this case
gligent towage rank-
supplies. The ques-
fully reserved by the
the court follows is
act claim.
e New York circuit,

§ 183)   RANK AS AFFECTED BY NATURE OF CLAIMS.   343

which are usually of such high authority that the admiralty lawyer instinctively turns to them first, cannot now be relied on. THE JOHN G. STEVENS CASE cites a great number of them for the purpose of deciding adversely to the doctrine which they had promulgated. It had been the preponderance of authority in that circuit that contract claims ranked tort claims. The principal reason given for this was that these tort claims were perils of the sea, against which the owner could insure. In arriving at that decision the New York judges had discussed the English cases on which the contrary doctrine had been based, and concluded that they had not passed upon the question at all, but were governed by peculiar circumstances arising out of the fact that the vessels in the English cases had nearly always been foreign vessels. The New York judges also had attempted to draw a distinction between claims of pure tort and claims of quasi tort arising out of contract. This was to meet the suggestion of Dr. Lushington in THE ALINE,[1] in which he had said that the contract creditor had his option whether to deal with the ship or not, but the tort creditor had not. Accordingly, the New York courts argued that this principle could only apply to torts like collision, in any event, and could not apply to cases arising out of negligent towage, or other such cases arising out of contract though torts in form where there had been such negligence. This distinction, also, is overruled by THE JOHN G. STEVENS CASE,[2] which was a case of negligent towage, and in which the supreme court, after considering the question fully, decided that cases of tort, whether arising out of contract or not, all stood on the same basis.

THE JOHN G. STEVENS CASE expressly reserves the question whether the claim for tort should be preferred to a prior claim for seamen's wages, but the reasoning of

---

[1] 1 W. Rob. Adm. 112.
[2] 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969.

that case applies with equal force even to claims of as high merit as seamen's wages, and it is believed that, when the question is fairly presented, a preference will be given to tort claims even over claims for prior wages.[4]

The case of THE ELIN[5] decided that preference should be given even to subsequent wages on the same voyage. On this point Sir Robert Phillimore quoted approvingly from an opinion of Dr. Lushington, as follows:

"I adhere to this opinion, and I do so especially for the following reasons: That by the maritime law of all the principal maritime states the mariner has a lien on the ship for his wages against the owner of that ship. That he has also a right of suing the owner for wages due to him. That some uncertainty may exist as to the mariner's lien when in competition with other liens or claims, and amongst these I might instance the case of a ship in the yard of a shipwright. In such a case I should have no difficulty in saying that the lien of the shipwright would be superior to the lien of the mariner. That, in the case of a foreign ship doing damage and proceeded against in a foreign court, the injured party has no means of obtaining relief save by proceeding against the ship itself; and that, I apprehend, is one of the most cogent reasons for all our proceedings in rem. That, in a case where the proceeds of a ship are insufficient to compensate for damages done, to allow the mariner to take precedence of those who have suffered damage would be to exonerate so far the owner of the ship, to whom the damage is imputed, at the expense of the injured party,—the wrongdoer at the expense of him to whom wrong has been done. Then, as to the mariner, what is the hardship to which he is exposed? It is true, he is debarred from proceeding against the ship, but his right to sue the owner remains unaffected. It is, however, not to be forgotten that in all these cases of damage, or

---

[4] The Freestone, 2 Bond, 234, Fed. Cas. No. 12,143.
[5] 8 Prob. Div. 39.