IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Case No. 1:05-cv-00328-SLR |
| ) | |
| MURPHY MARINE SERVICES, INC., ) | |
| et al., ) | Case No. 01-926 |
| ) | through 01-950 (MWF) |
| Debtors. ) | |
| ) | |
| MATTHEW BILBOW, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| MUMA SERVICES, INC., ) | |
| ) | |
| Appellee. ) | |

**OPENING BRIEF OF APPELLANT, MATTHEW BILBOW**

                                                Charles J. Brown, III (No. 3368)
                                                Elzufon Austin Reardon Tarlov
                                                & Mondell, P.A.
                                                300 Delaware Avenue, Suite 1700
                                                P.O. Box 1630
                                                Wilmington, Delaware 19899
                                                (302) 428-3181

Dated: September 29, 2005                        Counsel for Appellant

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

I.   Statement of the Issue ................................................................................. 2

II.  Standard of Review ..................................................................................... 3

III. Nature and Stage of the Proceedings .......................................................... 4

IV.  Summary of the Argument .......................................................................... 5

V.   Statement of Facts ....................................................................................... 6

VI.  Bankruptcy Court erred in determining that, as a matter of law, Bilbow did not possess a maritime tort claim .................................................................... 7

VII. Conclusion ................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**                                                                                                               **PAGE**

Boudoin v. Lykes Brothers Steamship Co., Inc., 348 U.S. 336, 75 S. Ct. 382 (1955) ................8

Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S. Ct. 1185 (1963) ............................. *passim*

In re Lernout & Hauspie Speech Products N.V., 308 B.R. 672, 675 (D.Del. 2004) .......................3

In re O'Brien Environmental Energy, Inc., 188 F.3d 166, 122 (3d Cir. 1999) ................................3

Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S. Ct. 418 (1971) ......................................... *passim*

**TREATISE**

1B Benedict on Admiralty (7th ed. 2002) § 29 p. 3-220 ................................................................8

## I. Statement of the Basis of Appellate Jurisdiction

This an appeal from a decision of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") made on March 30, 2005, in which the Bankruptcy Court concluded that Matthew Bilbow's (hereinafter "Bilbow") claim for personal injuries was not, as a matter of law, entitled to priority as a maritime tort claim, which precluded Bilbow from asserting a lien against the proceeds of the sale of the vessel. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a).

## II. Statement of the Issue

Whether the Bankruptcy Court erred in determining that, as a matter of law, a longshoreman injured on a pier due to the negligence of a crew member of a vessel who was operating a motor vehicle on the pier within the scope of his employment, could not give rise to a maritime claim against such vessel.

### III. Standard of Review

The District Court may affirm, modify or reverse a Bankruptcy Court's judgment, order, or decree or remand with instructions for further proceedings. 28 U.S.C. §158(a); F.R.Bankr. P. 8013. In reviewing the decision of the Bankruptcy Court, the District Court reviews the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof. In re O'Brien Environmental Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). A bankruptcy court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts. Id. In determining whether an error exists, the Bankruptcy Court's application of the law to the facts is reviewed *de novo*. Id. See also In re Lernout & Hauspie Speech Products N.V., 308 B.R. 672, 675 (D.Del. 2004) (The Bankruptcy Court's finding of historical or narrative facts must be accepted unless clearly erroneous, but this Court may exercise plenary review of the Bankruptcy Court's choice and interpretation of legal precepts and its application of those precepts to the historical facts).

The basic facts pertinent to Bilbow's assertion of a maritime lien against the sale proceeds of the Debtors' vessel, the M/V Humacao, as presented to the Bankruptcy Court, are not in dispute.[1] Accordingly, this Court must review *de novo* whether the Bankruptcy Court engaged in a proper analysis under Gutierrez[2], in making its determination that Bilbow's on shore personal injury could not give rise to a priority maritime tort claim or to a lien against the proceeds of sale of the vessel even if Bilbow was able to prove at trial, as he has alleged, that the crew member who was operating the motor vehicle which struck and injured him, was acting within the scope of his employment of the vessel.

---

[1] Appellee does dispute Bilbow's allegation that the crew member was acting within the scope of his employment. The Bankruptcy Court, however, never made any findings on this issue. Rather, the Bankruptcy Court effectively determined that it made no difference whether the motor vehicle operator was acting on ship's business. The simple

### IV. Nature and Stage of the Proceedings

On March 21, 2001 (the "Petition Date"), MUMA Services Inc. (f/k/a Murphy Marine Services, Inc.), et al., (the "Debtors"), filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). (D.I. 1)[3]. The Chapter 11 bankruptcy case converted to a Chapter 7 case on July 25, 2002 (D.I. 2265). On April 26, 2002, the Bankruptcy Court approved an Order Authorizing the Sale of the Debtor's Assets Free and Clear of All Liens (D.I. 1728). Substantially all of the assets of the Debtors' estates were sold in accordance with an order providing that liens attached to the sale proceeds. On or about July 10, 2002, Bilbow timely filed an Amended Notice (the "Amended Notice") asserting a maritime lien claim. (D.I. 2130). On March 30, 2005, the Bankruptcy Court entered its Opinion and subsequent Order denying Matthew Bilbow's assertion of a maritime lien. (D.I. 4279, 4280).

This is Bilbow's Opening Brief in support of its appeal of the Bankruptcy Court's Opinion and Order.

---

fact that the injury occurred on the pier as opposed to on the ship precluded Bilbow from being able to assert a maritime claim and lien according to the Bankruptcy Court.
[2] Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185 (1963)
[3] All references to D.I. are to the docket for case number 01-00926 (MFW) in the Bankruptcy Court.

## V. Summary of the Argument

The Bankruptcy Court's Opinion and Order filed on March 30, 2005, should be reversed. This Court should afford Bilbow the same opportunity, that was afforded the other four longshoremen asserting maritime claims and liens, to present the facts of his case to a jury to determine the validity of Bilbow's maritime tort claim (which, if valid, would give rise to a maritime lien against the proceeds to the sale of the Debtors' vessel, the M/V Humacao). Bilbow's work as a longshoreman crane operator and his being struck by a motor vehicle operated by an employee of the Debtors while acting within the scope of his employment aboard the M/V Humacao that the Debtors owned and operated gives rise to a maritime claim under the standards set forth by the Court in Gutierrez v. Waterman S.S. Corp., 373 U.S. 206, 83 S.Ct. 1185 (1963). An employee of the Humacao injured Bilbow and under the Gutierrez standard, a tort committed by a ship's employee while within the scope of his employment of the ship is a tort committed by the ship itself. Therefore, the tort committed against Bilbow by the employee of Humacao while engaged in the ship's business, would subject the Humacao to *in rem* liability and result in Humacao being held liable for Bilbow's injuries.

For these reasons, the decision of the Bankruptcy Court should be reversed, and the Order disallowing Bilbow's claim priority as a maritime tort claim as a matter of law should be vacated. Bilbow should be given the same opportunity the other longshoremen were provided, to have his case heard before a court with competent jurisdiction to liquidate this claim (See 28 U.S.C. § 157(b)(5)) and determine whether Bilbow in fact has a valid maritime claim that would give rise to a maritime lien.[4]

---

[4] Again, Appellee denies that the crew member was acting within the scope of his employment and the Bankruptcy Court made no finding with respect to this.

## VI. Statement of Facts

On or about February 25, 2000, Bilbow, a longshoreman crane operator, was injured while on a pier at the Packer Avenue Terminal in Philadelphia, Pennsylvania when he was struck by a motor vehicle operated by a crew member of the M/V Humacao that the Debtors owned and operated. Bilbow asserted that the crewmember was acting within the scope of his employment.

On March 21, 2001, Debtors, filed voluntary petitions for relief under the Bankruptcy Code. On April 26, 2002, the Bankruptcy Court approved an Order Authorizing the Sale of the Debtor's Assets Free and Clear of All Liens, with liens attaching to proceeds. On or about July 10, 2002, Bilbow timely filed an Amended Notice asserting a maritime lien claim against the sale proceeds.

On July 1, 2003, the Bankruptcy Court held a hearing to determine the extent, validity and priority of the liens asserted against the sale proceeds. On March 30, 2005, the United States Bankruptcy Court for the District of Delaware entered its Opinion and subsequent Order denying, as a matter of law, Matthew Bilbow's assertion of a maritime tort claim and lien.

## VII. Argument

1. **The Bankruptcy Court erred in determining that, as a matter of law, Bilbow did not possess a maritime tort claim.**

The Bankruptcy Court erred in determining that the injuries sustained by Matthew Bilbow, as a result of an employee of Humacao striking Bilbow with a motor vehicle, could not give rise to a maritime claim. The Supreme Court in <u>Gutierrez</u>, established that under certain circumstances an injury that occurs on shore can give rise to a maritime claim.[5] The Court further noted that "There is no distinction between torts committed by the ship itself and by the ship's personnel while operating it, any more than there is between torts 'committed' by a corporation and by its employees." <u>Id.</u> at 210, Cf. <u>Hopson v. Texaco, Inc.</u>, 383 U.S. 262, 86 S.Ct 765 (1966) (admiralty jurisdiction and the Jones Act implicated when seamen were involved in an automobile accident during repatriation).

In <u>Victory Carriers, Inc. v. Law</u>, 404 U.S. 202, 92 S.Ct. 418 (1971) the Supreme Court again had the opportunity to determine the extent to which `admiralty jurisdiction applied with a dockside incident. In <u>Victory Carriers</u>, a longshoreman was injured by an allegedly defective forklift that the longshoreman was operating while loading cargo onto a vessel. In finding that there was no maritime jurisdiction, the Court stated:

> "In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the forklift was not under the control of the ship, **or its crew**, and the accident did not occur aboard ship or on the gangplank."

---

[5] <u>Gutierrez</u> was decided prior to Congress revising the Longshore and Harbor Worker's Compensation Act in 1972. Nevertheless, the revision did not alter the basic tenet that a tort committed by a ship's employee is a tort of the ship even if the effect is felt on land. See 46 U.S.C. §740 "The admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damages or injury to person or property caused by a vessel on navigationable water notwithstanding that such damage or be done or consummated on land." In revising the Longshore and Harbor Worker's Compensation Act Congress simply required that a longshoreman must establish negligence on the part of a ship as opposed to unseaworthiness.

7

In the instant case, unlike the Plaintiff in Victory Carriers, the motor vehicle that struck Bilbow was under the control of a crewmember of the Humacao and Bilbow asserts that this crew member was acting within the scope of his employment.

Under the facts of Gutierrez, a longshoreman was injured as a result of slipping on cargo that was spilled when vessel was being unloaded. The Court determined that the act of spilling the beans by an employee of the ship was transferable to the ship itself and therefore could give rise to a maritime lien. This line of reasoning that the tortious acts of a ship's employee acting within the scope of that employment does give rise to a maritime claim is echoed throughout Admiralty Law. 1B Bendedict on Admiralty (7th ed. 2002) § 29 p. 3-220.[6] Cf. Boudoin v. Lykes Brothers Steamship Co., Inc., 348 U.S. 336, 75 S. Ct. 382 (1955) (ship found to be unseaworthy as a result of crew member with a propensity towards violence assaulting another crew member.)

While working on the pier at the Packer Avenue Terminal in Philadelphia, Pennsylvania, Mr. Bilbow was struck by a motor vehicle operated by an employee of the M/V Humacao. The Bankruptcy Court incorrectly discerned that the facts of Bilbow do not fit within the Supreme Court's dictates regarding maritime jurisdiction; "case is within the maritime jurisdiction . . . when, as here, it is alleged that the shipowner commits a tort while or before the ship is being unloaded, and the impact of which is felt ashore at a time and place not remote from the wrongful act." Gutierrez, 373 U.S. at 210. The motor vehicle that struck Bilbow was operated by a crew member of the Humacao. Whether the crew member was engaged in ship's business and within the scope of employment, specifically performing duties prior to and during the unloading of the ship, is a question of fact to be decided by a court with competent jurisdiction to liquidate Bilbow's claim. If the crew member was acting within the scope of his employment

and engaged in ship's business, the Humacao would be liable for Bilbow's injuries. See Gutierrez, supra and Victory Carriers, supra.

### VIII. Conclusion

The Bankruptcy Court erred in not allowing Bilbow the same opportunity afforded the other longshoremen to assert before a Court of competent jurisdiction that he has a maritime tort claim, which, if proven at trial, would entitle him to a maritime lien against the sale of assets of the vessel. The Bankruptcy Court's Opinion and Order of March 30, 2005 should be reversed as it applied to Matthew Bilbow.

September 29, 2005                              ELZUFON AUSTIN REARDON
                                                TARLOV & MONDELL, P.A.

                                                /s/ Charles J. Brown, III
                                                Charles J. Brown, III (Bar No. 3368)
                                                300 Delaware Avenue, Suite 1700
                                                P.O. Box 1630
                                                Wilmington, Delaware 19801
                                                (302) 428-3181

                                                Counsel to Appellant

---

[6] "An employer is legally responsible for the negligence of an employee while acting within the course and scope of his job." 1B Bendedict on Admiralty (7th ed. 2002) § 29 p. 3-220

9

## CERTIFICATE OF SERVICE

I, Charles J. Brown, III, hereby certify that I caused a copy of the foregoing *Appellant's Opening Brief on Appeal* to be served upon the following parties via first class mail.

Daniel K. Astin, Esq.
Charlene Davis, Esq.
The Bayard Firm
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware  19899

Alfred E. Yudas, Jr., Esq.
Watson, Farley & Williams
380 Madison Avenue
New York, New York  10017

Richard Riley, Esq.
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, Delaware  19899

I certify the foregoing to be true and correct under the penalty of perjury.

Dated: September 29, 2005                    */s/ Charles J. Brown, III*
                                             Charles J. Brown, III (No. 3368)

# EXHIBIT

# BENEDICT ON ADMIRALTY

## VOLUME 1B

### SEAMAN'S ACTIONS

**GELPI SULLIVAN CARROLL & GIBBENS**

*New Orleans, LA*



# Chapter III

# NEGLIGENCE AND UNSEAWORTHINESS

Form No.: 21-1—Basis for Action
Form No.: 21-2—Basis for Action
Form No.: 21-3—Jones Act Negligence: Responsibility for Acts of Employees; Duty to Seaman; Industry Custom
Form No.: 21-4—Jones Act Negligence: Responsibility for Acts of Employees; Duty to Seaman; Industry Custom
Form No.: 21-5—Jones Act Negligence: Contracted Work

Form No.: 23-1—Duty To Provide Seaworthy Vessel
Form No.: 23-2—Duty To Provide Seaworthy Vessel
Form No.: 23-3—Duty To Provide Seaworthy Vessel
Form No.: 23-4—Operational Negligence

Form No.: 25-1—Comparative Negligence
Form No.: 25-2—Comparative Negligence
Form No.: 25-3—Comparative Negligence
Form No.: 25-4—Comparative Negligence: Seaman's Duties
Form No.: 25-5—Comparative Negligence: Seaman's Duty To Report Dangerous Condition
Form No.: 25-6—Comparative Negligence: Normal Hazards
Form No.: 25-7—Comparative Negligence: Inherent Occupational Risk
Form No.: 25-8—Comparative Negligence: Primary Duty Rule (Walker Doctrine)

Form No.: 27–1—Burden of Proof
Form No.: 27–2—Res Ipsa Loquitur

Form No.: 28–1—Proximate Cause: Jones Act Negligence and Unseaworthiness
Form No.: 28–2—Proximate Cause: Jones Act Negligence and Unseaworthiness
Form No.: 28–3—Proximate Cause—Jones Act Negligence

Form No.: 29–1—Shipowner Responsibility for Acts of Employees
Form No.: 29–2—Seaman Acting Pursuant to Orders

Form No.: 30–1—Duty To Rescue

Form No.: 31–1—Assault on Seaman: Negligence and Unseaworthiness
Form No.: 31–2—Assault on Seaman: Unseaworthiness
Form No.: 31–3—Assault on Seaman: Contributory Negligence
Form No.: 31–4—Assault on Seaman: Contributory Negligence

Form No.: 32–1—Damages: Elements, Nature and Extent of Liability
Form No.: 32–2—Damages: Elements, Nature and Extent of Liability
Form No.: 32–3—Damages—Death Action: Elements, Nature and Extent of Liability
Form No.: 32–4—Damages: Pre-existing Condition
Form No.: 32–5—Damages: Pre-existing Condition
Form No.: 32–6—Damages: Life Expectancy and Work-Life Expectancy
Form No.: 32–7—Damages: Life Expectancy and Work-Life Expectancy
Form No.: 32–8—Damages: Loss of Future Earning Capacity
Form No.: 3–9—Damages: Loss of Future Earning Capacity
Form No.: 32–10—Mitigation of Damages
Form No.: 32–11—Damages: Interrogatories to the Jury
    33–40. Reserved

## § 21  Negligence—Generally.

The question of what constitutes negligence under the Jones Act has assumed less and less importance as the scope of the warranty of seaworthiness has

### FORM No. 29–1

### Shipowner Responsibility for Acts of Employees[41]

An employer is legally responsible for the negligence of an employee while acting within the course and scope of his job. It is not necessary to show that the management or officers of the employer company were themselves negligent in any way for it to be responsible.

---

[41] Form adapted from charges supplied by Judge Alvin B. Rubin of the Eastern District of Louisiana.